**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **VERONICA MICHLESKI**, individually and on behalf of all others similarly situated, | Case No. 2:17-cv-57 |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| **CONTACTABILITY.COM LLC d/b/a UnitedStatesInsurance.com**, an Ohio limited liability company, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## BRIEF SUMMARY

1.      Plaintiff Veronica Michleski ("Michleski" or "Plaintiff") brings this Class Action Complaint ("Complaint") against Defendant Contactability.com LLC d/b/a UnitedStatesInsurance.com ("Contactability" or "Defendant") to: (1) stop its practice of placing calls using an "automatic telephone dialing system" ("ATDS") and/or using "an artificial or prerecorded voice" to the cellular telephones of consumers nationwide without their prior express consent, (2) enjoin Defendant from continuing to place pre-recorded telephone calls to consumers who elected to opt out of receiving them, (3) stop Defendant from calling consumers who are registered on the National Do Not Call Registry, and (4) obtain redress for all persons injured by its conduct. Plaintiff, for her complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

2.      Defendant Contactability is a lead generation company operating across multiple types of insurance sectors that purports to deliver targeted, high-intent traffic to insurance agents.

3.     The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* and its implementing regulations, 47 C.F.R. §64.1200, *et seq.* prohibit companies, such as Contactability, from placing calls using an ATDS ("autodialed calls") and/or using "an artificial or prerecorded voice" ("prerecorded calls") to cellular telephones without first obtaining consent. Contactability has violated, and continues to violate, the TCPA and its regulations by placing autodialed and/or prerecorded calls to cellular telephone subscribers who have not expressly consented to receiving such calls and/or (b) who have expressly requested not to receive such calls.

4.     In an effort to obtain leads for its services, Contactability made (or directed to be made on its behalf) autodialed and/or prerecorded calls to the telephones of Plaintiff and other members of the putative classes without first obtaining express consent to do so—all in violation of the TCPA.

5.     The TCPA was enacted to protect consumers from unauthorized calls exactly like those alleged in this Complaint – autodialed and/or prerecorded calls placed to cellphone numbers without each consumer's prior express written consent.

6.     By making the telephone calls at issue in this Complaint, Defendant caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interfered with Plaintiff's and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendant also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating cellular minutes.

7.     In response to Defendant's unlawful conduct, Plaintiff files this lawsuit seeking injunctive relief requiring: (1) Defendant to cease all prerecorded telephone calling activities without first obtaining prior express consent; (2) to stop placing autodialed and/or prerecorded calls to Plaintiff and the Classes after they request that Defendant's autodialed and/or prerecorded calls prerecorded calls stop, and (3) to stop placing autodialed and/or prerecorded calls to those that are listed on the National Do Not Call Registry. Plaintiff also seeks an award of statutory damages to the members of the Classes under the TCPA, plus court costs and reasonable attorneys' fees.

## PARTIES

8.     Plaintiff Michleski is a natural person over the age of eighteen (18) and a citizen of the Commonwealth of Pennsylvania.

9.     Defendant Contactability.com, LLC is a limited liability company organized in and existing under the laws of the State of Ohio, with its principal place of business located at 118 E. Main Street, Suite 301, Columbus, Ohio 43215, in this District.

## JURISDICTION & VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq*., a federal statute. This Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the alleged Classes consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

11.     This Court has personal jurisdiction over Contactability because it is headquartered in this District, solicits significant consumer business in this District, has entered

into business contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, was directed from, and/or emanated from this District.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant is headquartered in this District, solicits a significant amount of consumer business within this District, and because a portion of the wrongful conduct giving rise to this case occurred in, was directed from, and/or emanated from this District.

## COMMON ALLEGATIONS OF FACT

13.     Contactability is a lead generator for the insurance industry.

14.     Contactability owns and operates a number of insurance related websites, including SmartFinancial.com and UnitedStatesInsurance.com.[1] (*See* Screenshot of Contactability's Website, attached hereto as Exhibit A.)

15.     Unfortunately for consumers, Defendant Contactability casts its marketing net too wide. That is, in an attempt to promote its business and to generate leads for insurance products Defendant conducted (and continues to conduct) a wide scale telemarketing campaign that repeatedly makes unsolicited autodialed and/or pre-recorded calls to consumers' telephones— including cellular telephones and numbers that appear on the National Do Not Call Registry— without their express written consent, all in violation of the TCPA.

16.     Defendant calls these consumers on their cellular telephones using an ATDS without their prior express consent in violation of the TCPA.

17.     Furthermore, Defendant calls these consumers who have no "established business relationship" with Defendant and who are registered on the National Do Not Call Registry.

18.     Finally, even when consumers try to opt out of future calls by requesting to never

_____

[1] https://www.contactability.com/pages/about.html

be called again, Defendant continues to call them.

19.     Not surprisingly, these practices have led to significant complaints from consumers, which can be found quickly on the Internet. For example, consumers have publicly complained that:

- That number always rings my phone and then hangs up, I am getting angry![2]

- Automated call regarding recent insurance quote request.[3]

- Has called my cell phone twice an hour, since 9:00 am this morning (May 23, 2016). I answered twice and both times the call hung up. This number continues to call me twice an hour.[4]

- On Friday, someone called me early this morning, but person hung up immediately after I answered![5]

- Called multiple times and no message left.[6]

- Keeps calling at different tims [sic] of day and never leaves a message.[7]

20.     At no time did Defendant obtain prior express consent from the Plaintiff and the Classes orally or in writing to receive prerecorded calls. Also, at no time did Defendant obtain prior express consent that contained a disclosure informing Plaintiff or any other consumer that agreeing to receive prerecorded calls was not a condition of the purchase of any property or service.

21.     In making the phone calls at issue in this Complaint, Defendant and/or its agent utilized an automatic telephone dialing system.[8] Specifically, the hardware and software used by

---

[2] http://telonada.org/en/4128722740
[3] https://www.shouldianswer.com/phone-number/4128722740
[4] http://www.spokeo.com/732-394-telemarketers
[5] http://phoneleak.com/number/7323946640
[6] *Id.*
[7] *Id.*
[8] Defendant admits utilizing such equipment. "We may also contact you by telephone using an automated dialing system along with a pre-recorded message or interactive voice response

Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously (all without human intervention).

22.     As explained by Contactability in one of its marketing videos, within seconds of a potential customer completing an online insurance form, that person will get a call from Contactability to qualify them as a sellable lead. If they are unable to immediately reach them, Contactability will follow-up with that person 10 times.[9]



Figure 1: https://www.youtube.com/watch?v=akjm5_nPMhw

23.     Defendant Contactibility calls consumers without their consent on their phones that are registered with the Do Not Call Registry. Telemarketers can easily and inexpensively avoid calling consumers who are registered on the National Do Not Call Registry by "scrubbing" their call lists against the National Do Not Call Registry database. The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove

system." *See* http://unitedstatesinsurance.com/terms.html; https://smartfinancial.com/terms-of-use/
[9] https://www.youtube.com/watch?v=akjm5_nPMhw

those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

24.     To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

25.     There are numerous third party services that will additionally scrub the call lists for a telemarketer to segment out landline and cellular telephone numbers, since the consent standards differ depending on what type of phone a telemarketer is calling.[10]  Indeed, one service notes that they can:

> Instantly verify whether a specific phone number is wireless or wireline to learn if TCPA regulations apply – and verify the identity of the current subscriber to determine if they are the same party who provided you with consent.[11]

26.     Defendant knowingly made (and continues to make) telemarketing calls without the prior express consent of the call recipients and knowingly continues to call them after requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Classes, it also intentionally and repeatedly violated the TCPA.

## PLAINTIFF'S EXPERIENCE WITH DEFENDANT

27.     Plaintiff Michleski is the subscriber to and customary user of a personal cellular telephone number that will be disclosed in discovery.

28.     Plaintiff registered her cellular telephone on the National Do Not Call Registry on December 3, 2004.

29.     Beginning on approximately June 13, 2016, Plaintiff Michleski began to receive

---

[10] See e.g. http://www.dncsolution.com/do-not-call.asp; http://www.donotcallprotection.com/do-not-call-compliance-solutions-1; http://www.mindwav.com/tcpa_compliance_solution.asp;
[11] https://www.neustar.biz/services/tcpa-compliance

prerecorded telemarketing calls on her cellular telephone from 412-872-2740 offering quotes on various types of insurance.

30. The prerecorded telephone calls to Plaintiff were allegedly made in response to an inquiry about obtaining insurance. Plaintiff Michleski has not looked into getting insurance for over 4 years and is unfamiliar with Contactability, SmartFinancial.com, or UnitedStatesInsurance.com.

31. Plaintiff Michleski never consented orally or in writing to receive prerecorded and/or autodialed calls from Contactability or any of its affiliates, agents, or customers.

32. Between approximately June 13 and June 23, 2016, Plaintiff Michleski received multiple prerecorded and/or autodialed calls from Contactability.

33. When Plaintiff Michleski first started receiving these prerecorded and/or autodialed calls, she would press the button indicated by the message that would let her speak with a live agent. When Defendant's agent would answer, Plaintiff would ask that Defendant stop calling her, explaining that she is not looking for an insurance quote.

34. Despite her repeated requests for the prerecorded and/or autodialed calls to stop, Plaintiff continued to receive up to 8 prerecorded or autodialed calls from Defendant per day.



35. Often Plaintiff would ask one of Defendant's agents to place her on their do not call list only to receive another call from Defendant within minutes of the prior stop request.

36. This despite the fact that Defendant explicitly states on their own website contactibility.com that it honors both the National Do Not Call Registry and consumer's attempts to opt-out of telemarketing calls:

> *In keeping with state and federal laws, it is the policy of this company that we will not make sales related telephone calls to any person who has indicated a desire not to receive such calls. This includes those who have registered with state or federal "Do Not Call lists," as well as those who have previously told us directly that they do not wish to receive such calls*[12]

37. Plaintiff Michleski received approximately 30 prerecorded and/or autodialed calls from Defendant in total. All of the prerecorded and/or autodialed calls from Defendant showed on Plaintiff's caller ID as being from 412-872-2740, a phone number controlled by Defendant.

38. Plaintiff Michleski had to stop her per-hour work to answer the calls from Defendant which took away from her otherwise billable time.

39. Plaintiff does not have a relationship with Defendant, has never provided her telephone number directly to Defendant, and has never consented to allowing Defendant to place prerecorded and/or autodialed calls to her or offer her its services. Simply put, Plaintiff has never provided any form of prior express written or oral consent to Defendant to place prerecorded and/or autodialed calls to him and has no business relationship with Defendant.

40. Defendant was, and is, aware that the above-described prerecorded and/or autodialed calls were made to consumers like Plaintiff who had not consented to receive them and whose telephone numbers were registered with the National Do Not Call Registry.

41. By making unauthorized prerecorded and/or autodialed calls as alleged herein,

---

[12] https://contactability.com/pages/dnc.html

Contactability has caused consumers actual harm. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls, in addition to the wear and tear on their cellular telephones, consumption of battery life, lost cellular minutes, loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls, in the form of the diminished use, enjoyment, value, and utility of their cellular telephone plans. Furthermore, Defendant made the calls knowing that such calls interfered with Plaintiff and the other Class members' use and enjoyment of, and the ability to access their cellphones, including the related data, software, and hardware components.

42.     To redress these injuries, Plaintiff, on behalf of herself and the Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded and/or autodialed calls to cellular telephones. On behalf of the Classes, Plaintiff seeks an injunction requiring Defendant to cease all unauthorized prerecorded and/or autodialed calling activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and the three Classes defined as follows:

**Pre-recorded No Consent Class**: All persons in the United States who from the four years prior to the filing of the Complaint to the present (1) Defendant (or a third person acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) for the purpose of selling Defendant's products and services, (4) using a pre-recorded voice, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiff.

**Do Not Call Registry Class**: All persons in the United States who from the four years prior to the filing of the Complaint to the present (1) Defendant (or a third person acting on behalf of Defendant) called more than one time on his/her cellphone, (2) within any 12-month period, (3) where the cellphone number had

been listed on the National Do Not Call Registry for at least thirty days, (4) for the purpose of selling Defendant's products and services, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

**Pre-recorded Stop Call Class**: All persons in the United States who from the four years prior to the filing of the Complaint to the present (1) Defendant (or a third person acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) for the purpose of selling Defendant's products and services, (4) using the same pre-recorded voice or message used to call the Plaintiff, (5) after the person informed Defendant that s/he no longer wished to receive calls from Defendant.

44. The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff anticipates the potential need to amend the class definitions following reasonable class discovery.

45. **Numerosity**: The exact number of members within the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed pre-recorded calls to tens of thousands of consumers who fall into the definition of the Classes. Members of the Classes can be identified through Defendant's records.

46. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Classes in that Plaintiff and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct. Plaintiff is a member of the classes, and if Plaintiff has a

right to recover so too do the absent class members.

47. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

48. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant systematically made telephone calls to individuals who did not previously provide Defendant and/or its agents with their prior express consent to receive such phone calls;

(c) Whether Defendant made the calls with the use of a pre-recorded voice message;

(d) Whether Defendant systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

(e) Whether Defendant maintained reasonable procedures for complying with the Do Not Call regulations;

(f) Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct; and

(e) Whether Defendant systematically made telephone calls to consumers

after they explicitly asked not to be called from Defendant.

49. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

<u>**FIRST CAUSE OF ACTION**</u>
**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.**
**(On behalf of Plaintiff and the Pre-recorded Message Class)**

50. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

51. Defendant made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Pre-Recorded Message Class—without their prior express written consent—in an effort to generate leads for Contactability's products and services.

52. Defendant failed to obtain any prior express consent that included, as required by

47 C.F.R. § 64.1200(f)(8)(i) a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

53.     Even if such disclosures were provided, Plaintiff and the class members had no choice but to provide consent—the disclosure was effectively rendered meaningless.

54.     Further, Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Pre-Recorded Message Class simultaneously and without human intervention.

55.     By making unsolicited telephone calls to Plaintiff and members of the Pre-Recorded Message Class's cellular telephones without prior express consent, and by utilizing an ATDS and/or a pre-recorded voice, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

56.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Pre-Recorded Message Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under 47 U.S.C. §227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

57.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Pre-Recorded Message Class.

## SECOND CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*
### (On behalf of Plaintiff and the Do Not Call Registry Class)

58.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

59.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

60.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

61.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

62.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or

entity has instituted procedures for maintaining a list of persons who request not to receive

telemarketing calls made by or on behalf of that person or entity. The procedures instituted must

meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

> 63.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated,

telephone solicitations to wireless telephone subscribers such as Plaintiff and the Do Not Call

Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

64. Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy of dealing with do not call requests available upon demand, by failing to inform or train its personnel involved in any aspect of telemarketing regarding any such do not call list, and by failing to internally record and honor do not call requests.

65. Defendant made more than one unsolicited telephone call to Plaintiff and members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

66. Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

67. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in

damages for such violations of 47 C.F.R. § 64.1200.

68.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

### THIRD CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.**
**(On behalf of Plaintiff and the Pre-recorded Stop Call Class)**

69.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

70.     Defendant made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Pre-recorded Stop Call Class on their cellular telephone in an effort to sell its products and services *after* the person informed Contactability that s/he no longer wished to receive calls from Contactability.

71.     Defendant made the telephone calls using equipment that used a pre-recorded voice or had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

72.     Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Pre-recorded Stop Call Class simultaneously and without human intervention.

73.     By making unsolicited telephone calls to Plaintiff and members of the Pre-recorded Stop Call Class's cellular telephones after they requested to no longer receive calls, Contactability violated 47 U.S.C. § 227(b)(1)(A)(iii) by continuing to call them without express consent.

74.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the

Pre-recorded Stop Call Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

75.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Pre-recorded Stop Call Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Veronica Michleski, on behalf of herself and the Classes, prays for the following relief:

A.    An order certifying the Classes as defined above, appointing Plaintiff Veronica Michleski as the representative of the Classes and appointing her counsel as Class Counsel;

B.    An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

C.    An order declaring that Defendant's actions, as set out above, violate the TCPA;

D.    A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

E.    An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

F.      An order requiring Defendant to identify any third-party involved in the pre-recorded calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

G.      An injunction requiring Defendant to cease all unsolicited pre-recorded calling activities, and otherwise protecting the interests of the Class;

H.      An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

I.      An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

J.      An injunction prohibiting Defendant from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA;

K.      An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

L.      Such other and further relief that the Court deems reasonable and just.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: January 18, 2017                 **VERONICA MICHLESKI**, individually, and on behalf of all others similarly situated,


By: /s/William M. Harrelson II

One of Plaintiff's Attorneys

William M. Harrelson II
Faust, Harrelson, Fulkner, McCarthy &
Schlemmer, LLP
12 S. Cherry Street
Troy, Ohio 45373
Tel: 937.335.8324
Will.Harrelson@fhfmslaw.com

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)*
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan Coleman
(Law@stefancoleman.com)*
Law Offices of Stefan Coleman, P.A.
201 S Biscayne Blvd., 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Counsel for Plaintiff and the Putative Class*

*Motion for admission *pro hac vice* to be filed